IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**FRANK PHILLIP KALITA. Jr.,**

    **Plaintiff,**

v.                                                      Civil action no. 1:07cv73
                                                          (Judge Keeley)

**FEDERAL BUREAU OF PRISONS;**
**HARLEY LAPPIN, Director;**
**WARDEN JOYCE FRANCIS;**
**D. HEADY, Unit Manager;**
**S. CARR, Case Manager;**
**G. SHERWOOD, CCM Coord,**

    **Defendants.**

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

On May 30, 2007, the Plaintiff, initiated this case by filing a civil rights complaint pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), a case in which the Supreme Court created a counterpart to 42 U.S.C. §1983 and authorized suits against federal employees in their individual capacities. On June 4, 2007, the Plaintiff was granted leave to proceed *in forma pauperis*. This matter is before the undersigned for an initial review and report and recommendation pursuant to LR PL P 83.01, et seq., and 28 U.S.C. §§ 1915(e) and 1915(A).

### II. BACKGROUND

On October 5, 2001, the Plaintiff pleaded guilty in the United District Court for the Eastern District of Virginia to Armed Bank Robbery in violation of 18 U.S.C. § 2113(a)&(d). He was sentenced to the custody of the Bureau of Prisons for a term of eighty-seven months, with credit for time served and five years supervised release with special conditions. In addition, he was ordered to

pay $15,603.00 in restitution. The judgment of the District Court was affirmed by the United States Court of Appeals on October 31, 2006. The Plaintiff is currently incarcerated at FCI Gilmer which is located in Glenville, West Virginia. Assuming Good Conduct Credit, the Plaintiff's projected release date is December 9, 2007.

### III. THE COMPLAINT

The Plaintiff alleges that on February 2, 2007, he inquired of his unit manager, Ms. Carr, and case manager, Mr. Heady when he was going to be sent to a Community Treatment Center ("CTC")[1] and where it would be located. In response, he was told on February 8, 2007, that he was being sent to a CTC located in Washington, D.C., known as Hope Village. On February 17, 2007, Plaintiff sent an inmate request to staff expressing concerns about his safety based on the proposed CTC placement in southeast Washington, D.C. Specifically, the Plaintiff indicated that he faced irreparable injury at this location because of his age and physical condition[2], as well as his status as a Caucasian. The Plaintiff indicates that his placement date for Hope Village was June 13, 2007.

The Plaintiff further alleges that although he indicated that he would accept less time in a CTC, and would prefer to wait for a safer location, he was told on May 16, 2007, by Ms. Carr and Mr. Heady that he would have to sign the papers for placement at Hope Village. The Plaintiff maintains that when he refused to sign the papers "committing" him to Hope Village, he was informed that he would remain in prison at FCI Gilmer for the balance of his sentence and no alternative CTC placement would be forthcoming.

The Plaintiff alleges that BOP officials have been deliberately indifferent concerning his

---

[1]Community Treatment Centers, or halfway houses are also referred to as Community Confinement Centers ("CCC"), and more recently as Residential Release enters ("RRC").

[2]The Plaintiff is sixty-one years old and maintains that he is medically classified as chronic care II under the BOP's treatment standard and is prescribed nine separate daily medications.

2

placement at the Hope Village CTC and have violated the Due Process Clause of the 5th Amendment which prohibits prisons officials from depriving him of "life, liberty or property" without due process of law. As relief, the Plaintiff seeks a temporary and permanent injunction prohibiting the BOP from forcing him to accept the CTC placement of Hope Village or loose his halfway house placement and remain in prison.

## IV.  AMENDED COMPLAINT

On August 1, 2007, the Plaintiff filed a Motion for Leave to File an Amended Complaint, which was granted on August 22, 2007. In his amended complaint, the Plaintiff adds two additional individual defendants: Gary Moore, manager of the Raleigh Community Corrections Management Office and Dwayne Hendrix, manager of the Baltimore Community Corrections Management Office. With respect to Mr. Hendrix, Plaintiff alleges that he has discovered that this is the individual who determined that he must either accept placement at Hope Village or refuse placement all together. Plaintiff further alleges that Mr. Moore, in connection with Mr. Hendrix, decided that no effort would be made to obtain an alternate CTC placement. Additionally, Plaintiff alleges that Ms. Carr wrote an "incident report" against him on July 20, 2007 and requested that he be placed in segregation.

## V.  Standard of Review

Because plaintiff is a prisoner seeking redress from a governmental entity or employee, the Court must review the complaint to determine whether it is frivolous or malicious. Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v.

Williams, 490 U.S. 319, 325 (1989). However, the Court must read *pro se* allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519, 520 (1972). A complaint which fails to state a claim under Fed. R. Civ. P. 12(b)(6) is not automatically frivolous. See Neitzke at 328. Frivolity dismissals should only be ordered when the legal theories are "indisputably meritless,"[3] or when the claims rely on factual allegations which are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 32 (1992). This includes claims in which the plaintiff has little or no chance of success. See Estelle v. Gamble, 429 U.S. 97, 106 (1976).

## VI. ANALYSIS

### A. Exhaustion

A Bivens action, like an action under 42 U.S.C. §1983, is subject to exhaustion of administrative remedies as required by the Prison Litigation Reform Act (PLRA). Porter v. Nussle, 534 U.S. 516 (2002). The Nussle decision makes it clear that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstance or particular episodes, and whether they allege excessive force or some other wrong," Nussle 534 U.S. at 532, and that "[a]ll 'available' remedies must now be exhausted; those remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.'" Id. at 524. The exhaustion requirement cannot be dispensed with, meaning that a prisoner must file a grievance and pursue any appeals, even if the relief the prisoner seeks, such as monetary damages, is unavailable. Booth v. Churner, 532 U.S. 731, 739-40 (2001).

The Fourth Circuit has determined that the PLRA does not require a prisoner to allege that he has exhausted his administrative remedies. Anderson v. XYZ Correctional Health Services, 407 F.3d

---

[3] Id. at 327.

674 (4th Cir. 2005). The Fourth Circuit further found that exhaustion is an affirmative defense, but that a district court may dismiss the complaint where the failure to exhaust is apparent from the face of the complaint or that the court may inquire "on its own motion into whether the inmate exhausted all administrative remedies." Id. at 683.

The BOP provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). If the prisoner achieves no satisfaction informally, he must file a written complaint with the warden (BP-9), followed by an appeal to the regional director of the Federal Bureau of Prisons (BP-10). Finally, if the prisoner has received no satisfaction, he may appeal to the office of the General Counsel (BP-11). 28 C.F.R. § 542.10-542.15; Gibbs v. Bureau of Prison Office, FCI, 986 F.Supp. 941, 943 (D.Md. 1997).

Here, although the Plaintiff had begun the administrative appeal process by filing a BP-8 on March 28, 2007, followed by a BP-9 on April 9, 2007, and a BP-10 on May 3, 2007, the Plaintiff admits in his complaint that he had not yet received a response to his BP-10, when he signed his complaint on May 24, 2007. In fact, that response was not received until June 14, 2007. Thereafter, the Plaintiff filed his BP-11, which was signed on June 27, 2007. The response to the BP-11 is dated September 19, 2007. Therefore, as evidenced by the documentation provided by the Plaintiff, he did not exhaust his administrative remedies prior to filing the instant action. However, exhaustion must be completed before the action is filed. See 42 U.S.C. § 1997e(a); Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002).[4] Consequently, the Plaintiff's complaint should

---

[4]The first circuit noted the following circuits had ruled on the issue of whether exhaustion could be completed during the pendency of the civil action:
> Neal v. Goord, 267 F.3d 116, 123 (2nd Cir. 2001)("[A]llowing prisoner suits to proceed, so lo as the inmate eventually fulfills the exhaustion requirements, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in

be dismissed because he failed to exhaust his administrative remedies prior to filing the instant action. However, even if the Court were to find that Plaintiff may exhaust his administrative remedies during the pendency of his complaint, as discussed in he following sections, the complaint should still be dismissed.

**B. Defendant: Federal Bureau of Prisons**

A <u>Bivens</u> cause of action is only available against federal officers in their individual capacities and cannot be brought against a federal agency. <u>See</u> <u>FDIC v. Meyer</u>, 510 U.S. 471, 486 (1994) (refusing to find a <u>Bivens</u> remedy against a federal agency); <u>see also</u> <u>Randall v. United States</u>, 95 F.3d 339, 345 (4th Cir. 1996) ("Any remedy under <u>Bivens</u> is against federal officials individually, not the federal government."). Therefore, the Federal Bureau of Prisons cannot be sued by the Plaintiff in a <u>Bivens</u> action.

**C. Harley Lappin, Director**

Liability in a <u>Bivens</u> case is "personal, based upon each defendant's own constitutional violations." <u>Truloch v. Freeh</u>, 2755 F.2d 391, 402 (4th Cir. 2001) (internal citation

---

federal court."); <u>Jackson v. Dist. of Columbia</u>, 254 F.3d 262, 268-69 (D.C. Cir. 2001) (Rejecting the argument that § 1997e(a) "permits suit to be filed so long as administrative remedies are exhausted before trial"); <u>Freeman v. Francis</u>, 196 F.3d 641, 645 (6th Cir. 1999)("The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit."); <u>Miller v. Tanner</u>, 196 F.3d 1190, 1193 (11th cir. 1999) ("An inmate incarcerated in a state prison, thus, must first comply with the grievance procedures established by the state department of corrections before filing a federal lawsuit under section 1983."); <u>Perez v. Wis. Dep't of Corr.</u>, 182 F.3d 532, 535 (7th Cir. 1999) ("[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment."). <u>But see</u> <u>Williams v. Norris</u>, 176 F.3d 1089, 1090 (8th Cir. 1999) (per curiam) (reversing district court's dismissal for failure to exhaust where "the record demonstrated that [Plaintiff's] grievance had been denied...at the time the court ruled").
<u>Medina-Claudio v. Rodriquez-Mateo</u>, 292 F.2d 31, 36 (1st Cir. 2002).

omitted). Thus, in order to establish liability in a Bivens case, the Plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See Zatler v. Wainbright, 802 F.2d 397, 401 (11th Cir. 1986). *Respondeat superior* cannot form the basis of a claim for violation of a constitutional right in a Bivens case. Rizzo v. Good 423 U.S. 362 (1976).

Here, Plaintiff does not allege any personal involvement on the part of Defendant Lappin. Instead, it appears that Plaintiff has named this Defendant only in his official capacity as the Director of the Federal Bureau of Prisons. However, a suit against government agents acting in their official capacities is considered a suit against the United States itself. See Kentucky v. Graham, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . 'generally present only another way of pleading an action against an entity of which an officer is an agent.'"). Thus, remedy under Bivens is not available against the defendant in his official capacity.

**D. Duane Heady, Shelly Carr, Gail Sherwood, Gary Moore, and Dwayne Hendrix**

As previously noted, the hallmark of the Plaintiff's complaint is that his due process rights have been violated by various employees of the Bureau of Prisons in assigning him to Hope Village and then failing to find him an alternate CCC placement when he refused to take the placement at Hope Village

The decision as to whether the Plaintiff should be released to an RRC is solely in the discretion of the Bureau of Prisons officials. This discretion is delegated to those officials by the Attorney general. 28 C.F.R. §§ 0.95 and 0.96. As to the incarceration, classification and

segregation of lawfully convicted prisoners, the Attorney General has complete and absolute discretion. 18 U.S.C. §§ 4081 and 4082. Consistent with this grant of discretion, inmates such as the Plaintiff have not been guaranteed by statute or regulation the right to early release or involvement in community-based programs.[5] The mere hope of the Plaintiff for inclusion in a halfway house program does not implicate constitutionally protected liberty interests. Hickson v. Burkhart, 838 F.2d 1209 (th Cir. 1988); Pugliese v. Nelson, 617 F.2d 916, 923 (2nd Cir. 1980). Therefore by denying the Plaintiff placement in a halfway house, the named defendants did not violate any constitutionally protected rights enjoyed by the Plaintiff.

## IV. RECOMMENDATION

In consideration of the foregoing, it is the undersigned's recommendation that: (1) the Plaintiff's Bivens complaint (Doc. 1) be **DISMISSED WITH PREJUDICE** under 28 U.S.C. §§ 1915(e) and 1915A for failure to state a claim. In addition, it is the undersigned's recommendation that the Plaintiff's Motion For Compensatory and Punitive Damages (Doc. 22) be **DENIED** as he has no underlying claim to support such awards.

Within ten (10) days after being served with a copy of this recommendation, any party may file with the Clerk of the Court written objections identifying the portions of the recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file

---

[5] 18 U.S.C. § 3624(c) obligates the BOP to facilitate an inmate's transition from the prison system. Under § 3621(b), the BOP may place a prisoner in a CCC for six months or more. Under § 3624(c), the BOP must formulate a plan of pre-release conditions. This plan may include CCC placement, home confinement, drug or alcohol treatment, or any other plan that meets the obligation of a plan that addresses the inmate's re-entry into the community. However, the obligation is qualified by the phrase "to the extent practicable." Security concerns or space limitations in a CCC near the inmate's home are among the factors that may make it impossible to transfer an inmate to a CCC for even part of the transition period. See Elwood v. Jeter, 386 F.3d 842 *th Cir. 2004).

objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1);Thomas v. Arn, 474 U.S. 140 (1985) Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* Plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet.

Dated: October 24, 2007

        /s/ James E. Seibert
        JAMES E. SEIBERT
        UNITED STATES MAGISTRATE JUDGE